**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

JEROME JACKSON,

    Plaintiff,

v.                                                  Case No. 12-14134

PNC BANK, et al.,

    Defendants.
_____/

**OPINION AND ORDER GRANTING DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT**

Seeking to stay in a house despite defaulting on a mortgage loan, Jerome Jackson sues PNC Bank, two Wayne County housing programs, Fannie Mae (the Federal National Mortgage Association), and two individuals.  There are seven counts, (I) breach of contract, (II) violation of 24 C.F.R. § 92, (III) violation of the Fair Housing Act and the Rehabilitation Act, (IV) emotional distress, (V) quiet title, (VI) violation of due process, and (VII) fraud.  Defendants move for summary judgment.  The matter is fully briefed, and no hearing is needed.  *See* E.D. Mich. LR 7.1(f)(2).  To prevail, Defendants must show that no reasonable jury could find for Jackson.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

For four years Jackson, a paraplegic, lived in an apartment in Detroit, paying rent with State money distributed by Defendant Wayne Community Living Services ("CLS"). (Pg ID 863, dep. 35-36; Pg ID 908, dep. 63; Dkt. # 31, Ex. E.)  In 2004 CLS told Jackson that it could no longer pay his $1,200-per-month rent and that he should move.

(Pg ID 908, dep. 64.)  That fall Jackson purchased a house ("the property") in Inkster, Michigan, with a thirty-year mortgage loan and a down payment from State programs. In the loan application Jackson reported a monthly income of $4,196, money that came mainly through CLS.  (Dkt. # 28, Ex. D; Pg ID 912, dep. 81.)  Therefore CLS provided Jackson most of each mortgage payment.  (Pg ID 915, dep. 92.)  The money CLS paid came mainly from Michigan's Habilitation Supports Waiver ("HSW") program, which helps the developmentally disabled live on their own.

In 2006 the State told CLS to ensure that each CLS client qualifies for his benefits.  (Pg ID 958-59, dep. 116-20.)  CLS determined that Jackson lacks the sort of developmental disability that qualifies a person for the HSW program.  CLS and Jackson discussed ways that Jackson could earn income, such as by starting a business or getting a job or a roommate, but Jackson declined each option.  (Pg ID 951, dep. 86-87.)  In early 2009, when other temporary sources of benefits lapsed, CLS stopped paying Jackson, who shortly defaulted on his mortgage.  (Pg ID 961, 964, dep. 126, 140-41; Dkt. # 28, Ex. N.)  For months Jackson and PNC, the holder of the mortgage, discussed modifying the mortgage loan.  (Dkt. # 28, Ex. O.)  In January 2010 PNC informed Jackson that foreclosure would commence and, three months later, it told him definitively that he could not afford a modified loan.  (Pg ID 682, 695.)  (The week before Jackson had written: "At this time no change has come with helping me with my home. . . . So I guess you w[i]ll have to move forward on foreclosure[.]"  (Dkt. # 28, P.))  In July 2011 Fannie Mae bought the property at a sheriff's sale.  (Dkt. # 28, Ex. R.)  The redemption period expired without event.

After the redemption period Jackson lost his interest in the property. *See Conlin v. M.E.R.S.*, 714 F.3d 355, 359-60 (6th Cir. 2013). Because Jackson lacks an interest in the property, no claim arising from the foreclosure or the sheriff's sale can succeed absent "a strong case of fraud, irregularity, or some peculiar exigency." *Steinberg v. Fed. Home Loan Mortg. Corp.*, 901 F. Supp. 2d 945, 949 (E.D. Mich. 2012); *Collins v. Wickersham*, 862 F. Supp. 2d 649, 654, 654 (E.D. Mich. 2012); *Dingman v. OneWest Bank, FSB*, 859 F. Supp. 2d 912, 918 (E.D. Mich. 2012).

Instead of attempting to build a "strong case" of fraud, irregularity, or peculiarity, Jackson lists, staccato, unfounded "defects" of the foreclosure and "wrongs" by Defendants. He says CLS fraudulently withheld the fact that it might pay less than all the mortgage loan. But he cites nothing that entitled him to assume from silence a guarantee of thirty years of payment. He says in the alternative that CLS promised to pay, but he has no promise on paper, and he alleges no facts—who told him what, when—establishing an oral agreement. He fatuously accuses others of lying about his income on the loan application that *he* signed and submitted.

Jackson says Defendants violated assorted federal regulations, but he fails to support his claims with evidence (his not citing the record is a constant problem). *See* Fed. R. Civ. P. 56(c)(1). Moreover, most of the regulations he cites apply only to a mortgage insured by the Department of Housing and Urban Development ("HUD"), *see* 24 C.F.R. § 203.500, and nothing establishes that those regulations govern the mortgage loan. He says that rules in 24 C.F.R. § 92 applied because HUD paid some of the down payment for the property. But the only line in the mortgage records that he cites for this point says, ambiguously, "Wayne Metro Grant," (Dkt. # 43, Ex. 10), and

3

anyway the purported violations of 24 C.F.R. § 92 are not only unsupported, but shotgunned.

The claim Jackson repeats most often, that no one would consider a loan modification, is disproved by the record, and, further, nothing suggests that Jackson could pay even a modified loan.[1] *See Dingman*, 859 F. Supp. 2d at 918. At all events, what Jackson never provides is a focused and coherent "strong case" in his favor.

Because nothing invalidates the foreclosure, the quiet-title claim fails. No concrete facts back the fraud or breach-of-contract claims, either. The claim under 24 C.F.R. § 92 fails both because Jackson never cogently alleges a regulatory violation and because he never identifies a private right of action for each distinct regulation invoked. *See Blessing v. Freestone*, 520 U.S. 329, 342-43 (1997).

The emotional-distress claim fails due to the manifest absence of "extreme" or "outrageous" conduct. *See Dalley v. Dykema Gossett*, 788 N.W.2d 679, 694 (Mich. Ct. App. 2010). Only one act bears mentioning—Jackson said in his deposition that someone at CLS "threatened" him. According to Jackson, however, the person said merely that CLS "would no longer be able to pay" the $1,200-per-month rent for the Detroit apartment, that if Jackson "couldn't find living at a lesser cost, then [CLS] would discontinue" the $1,200 payments, and that Jackson should consider "coming to the housing program." (Pg ID 1635-36.) As Jackson himself acknowledges, the $1,200

---

[1] (*See, e.g.*, Dec. 9, 2009, Letter from PNC to Jackson, Pg ID 675 ("Dear Customer: You recently discussed mortgage relief options with [our] Collections Center. The attached form contains a description of each of the relief options . . . ."); Dec. 28, 2009 Letter from PNC to Jackson, Pg ID 678 ("We have completed a review of your hardship assistance request. . . . Unfortunately, we are unable to approve . . . your request [because] we determined that you have a deficit income.").)

rent payments were to end in any case. In fact, when counsel asked, "So [the person at CLS] was telling you that you needed to find housing within a certain budget?" Jackson replied, "Right." (*Id.*) The point was true, and no threat occurred.

The due-process claim stands on undeveloped charge and demand. Jackson asserts that Fannie Mae owed him a hearing. He has neither theory nor authority for the exotic notion that the highest bidder at a sheriff's sale must conduct a hearing for the former holder of the property. He asserts casually that Michigan's "foreclosure regimen" is one of too little process. He presents no sustained analysis, and he raises not one case on due process and home foreclosure. And he asserts that CLS neglected process when finding that he did not qualify for the HSW program. Although he disparages CLS's decision in passing, he never undermines it, nor even discusses the law that governed it. What is more, he simply ignores the evidence that CLS notified him repeatedly of an impending change to his benefits, that CLS offered him the chance to challenge the decision, and that he never did so. (*See, e.g.*, Mar. 16, 2009, Letter from CLS to Jackson with attached "Request for Review by Local Dispute Resolution Process," Pg ID 1027-32.)

Jackson cites two papers that, he says, constitute requests for a "reasonable accommodation" under the Fair Housing Act and the Rehabilitation Act. *See Groner v. Golden Gate Gardens Apartments*, 250 F.3d 1039, 1044-45 (6th Cir. 2001). One is an April 2012 court paper, the other a February 2013 letter by Jackson's attorney, offering to re-purchase the property for less than a quarter Fannie Mae's bid at the sheriff's sale. Jackson never explains how his requests for accommodation, long after the July 2011 sheriff's sale, were "reasonable." *Cf.* Mich. Comp. Laws § 600.3240 (requiring a

previous property-holder redeeming a property to pay the high bid of the sheriff's sale). Jackson says he "requested review" of CLS's decision to stop passing him HSW benefits, but he cites no informative evidence, and he never addresses the unreasonableness of his failure to challenge the decision in the administrative process. Jackson must propose a specific accommodation and establish that it is reasonable. *See Groner*, 250 F.3d at 1044. He has not done so.

Jackson says CLS should not have told him to "get a job." It is unclear whether Jackson means that someone said rudely, "Get a job," or whether he objects more generally to CLS's raising employment as a way he could cover his loan payments. He offers no legal theory either way. Assuming he objects to a remark, he fails to show how an isolated comment amounts to actionable discrimination. If, as looks more likely, he objects to CLS's effort to help him find employment, then, suffice it to say, he fails to show why that good deed should be punished. Accordingly,

IT IS ORDERED that each motion for summary judgment [Dkts. ## 28, 31, 32] is GRANTED.

    s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated: August 29, 2013

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, August 29, 2013, by electronic and/or ordinary mail.

    s/Holly Monda for Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522

V:\Cleland\JUDGE'S DESK\C2 ORDERS\12-14134.JACKSON.SJ ckb.wpd